# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| TANYA HOLLIMON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 03-02919 D/P |
| SHELBY COUNTY GOVERNMENT, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION, ORDER AND JUDGMENT

## I. INTRODUCTION

Plaintiff Tanya Hollimon ("Hollimon" or "Plaintiff") brought a claim of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1, et seq. ("Title VII"). Hollimon alleges that she was subjected to various incidents of harassment through disciplinary actions, and was ultimately terminated from her position as a Shelby County Police officer. The Court conducted a bench trial on November 27, 2006 and March 9, 2007 on the merits of the case. After reviewing the administrative record, testimony of the witnesses, exhibits, and making credibility determinations, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. At all relevant times, Hollimon, an African-American female, was employed by the Shelby County Police Department ("Police Department") as a police officer from October 1987 until June 2002. Hollimon v. Shelby County Police Dept.,

1

No. 02-12954AA (Tenn. Dept. of Labor Trib. Feb.13, 2005) (hereinafter "Department of Labor Decision No. 02-12954AA").

2. Hollimon's employment was terminated by Shelby County on June 28, 2002. (Defendant's proposed pretrial order, page 3).

3. At all relevant times, witness Kathy Crowder was a lieutenant for the Shelby County Police Department. (Tr. 38.)

4. At all relevant times, during the years 1995-2001 specifically, all officers were required to work holidays. (Tr. 39.)

5. At all relevant times, during the years 2000-2002, senior officers had to work at least one holiday per year. (Tr. 39.)

6. According to a personnel memo dated March 11, 2002, Shelby County Police Officers were required to work one holiday. The choice of holiday was based on seniority (Ex. #1).

7. During all relevant times, seniority at the Shelby County Police Department was based on length of service, measured from the officer's hiring date. Certain privileges and preferences were given to employees based on seniority. (Tr. 53.)

8. On March 18, 2002, Plaintiff was notified in a memorandum about selecting a work holiday. Notification by Plaintiff was required by the end of her work shift. Captain Crowder testified that a holiday was selected for her when she did not timely respond. Plaintiff was notified of the selection on March 19, 2002 in writing. (Tr. 101, 103, 109, 135, Ex. #9)

9. At the time Plaintiff was given the memorandum, officers inferior to her in seniority had already been assigned holidays. (Tr. 104.)

10. Plaintiff was given only one work shift to select a holiday on which to work. (Tr. 104, 108.)

11. Captain Crowder testified that Plaintiff indicated that she refused to work on the holiday assigned to her. (Tr. 102.)

12. Captain Crowder then notified the chief of her department by memorandum, relating the conversation between Plaintiff and herself. (Tr. 102, 134.)

13. Captain Crowder testified that she notified her superior so that he could assign a holiday to Plaintiff. (Tr. 102.)

14. Captain Crowder was present at the June 2002 Loudermill hearing, which addressed charges against Plaintiff. (Tr. 71.)

15. Captain Crowder testified that part of the charges brought in the Loudermill hearing related to the holiday schedule incident. (Tr. 102.)

16. At all relevant times, Captain Crowder was a supervisor for Officer Jonathan Jones. (Tr. 65.)

17. At all relevant times, Shelby County Police Department maintained a parking policy which restricted parking of privately owned vehicles to a specific area. (Tr. 84, 88, 116., Exhibit #6)

18. Parking spots were assigned to Shelby County Police and Personnel (Tr. 85.)

19. Only a Shelby County Police Supervisor, or "shift commander" could allow someone to park in a space not assigned to them, in addition to permission from the person to whom the space was assigned. (Tr. 106, 117, Exhibit #6)

20. Captain Crowder had an assigned parking space (Tr. 105, 116.)

21. Captain Crowder testified that another car had parked in her space during the period in which Plaintiff was employed by Shelby County. Captain Crowder could not verify whether this unauthorized car was parked with permission. (Tr. 85, 86.)

22. Captain Crowder testified before the Civil Service Merit Board regarding Plaintiff's employment with Shelby County. (Tr. 99.)

23. At all relevant times, Officer Brian Beck, a white male, was an Officer for the Shelby County Police Department. (Tr. 146.)

24. At all relevant times, Officer Beck worked the 3pm to 11pm shift. (Tr. 174.)

25. At all relevant times, Shelby County Police Department personnel were governed by a policy regarding their lunch break. This policy allowed a 30 minute break per shift with officers limited to the "five perimeter" building area of the County Government offices, which included the Courthouse, Archive Building, CJC Building, Administrative Building and Office Building. (Ex. #4.)

26. Officer Beck testified that on several occasions, he parked his private vehicle illegally in violation of the department policy. (Ex. #7, Tr. 162, 164.)

27. Officer Beck further testified that he was never disciplined for parking his vehicle illegally. (Tr. 162.)

28. Further, Officer Beck admitted to violating Shelby County Police Policy by using his personal cell phone while patrolling in a police cruiser. (Tr. 163.)

29. Additionally, Officer Beck admitted that traveling beyond the five building perimeter for lunch was in violation of department policy.

**III.     CONCLUSIONS OF LAW**

Title VII prohibits discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Disparate treatment occurs when the employer treats the aggrieved employee less favorably than the employer treats other similarly situated employees, simply because of the aggrieved employee's race, color, religion, sex or national origin. Franklin v. ITT Weaver, 626 F.Supp. 177 (E.D. Mo. 1985). To make out a claim under Title VII, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Wilson v. Stroh Cos., 952 F.2d 942, 945 (6th Cir. 1992) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established the four-part, inferential test of a prima facie case, applicable to situations wherein the aggrieved employee could offer no direct evidence of conduct violative of Title VII. Under this test, Plaintiff must prove:

(1)     That [she] is a member of a protected group;

(2)     That [she] was subject to an adverse employment action;

(3)     That [she] was qualified for the position sought or held; and,

(4)     That [she] was replaced by a person outside the protected class.

Id. at 802; Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335, n. 15 (1977) (stating that if the aggrieved employee offers no direct evidence of unlawful discriminatory intent, the McDonnell Douglas test applies); Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995) (holding that the fourth element may also be satisfied by

5

showing that similarly situated non-protected employees were treated more favorably); Pierce v. Commonwealth Life Ins., 40 F.3d 796 (6th Cir. 1994); Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992).

Plaintiff may establish a prima facie case through circumstantial evidence "by showing that an employer took action adversely affecting Plaintiff's compensation, terms, conditions, or privileges of employment under circumstances giving rise to an inference of unlawful discrimination." Galbraith v. N. Telecom, Inc., 944 F.2d 275, 279 (6th Cir. 1991), cert. denied, 112 S.Ct. 1497 (1991); Talley, 61 F.3d at 1246. Alternatively, Plaintiff may establish a prima facie case of discrimination by presenting direct evidence of intentional discrimination by Defendant. Talley, 61 F.3d at 1246 (citing Terbovitz v. Fiscal Court, 825 F.2d 111, 114-15 (6th Cir. 1987)); see Int'l Bd. of Teamsters, 431 U.S. 324. The Court finds that the former applies to this case. Ms. Hollimon's employment was adversely affected due to the disciplinary action taken against her and ultimately her termination, which was the result of unlawful discrimination.

At the outset, the Court finds that Plaintiff is a member of a protected group, that Plaintiff suffered an adverse action, and that Plaintiff was qualified for the protection. The Court must then determine whether Plaintiff was treated differently from other employees similarly situated because of discrimination, or whether defendant has demonstrated a legitimate, nondiscriminatory reason for its actions.

Establishing disparate treatment between members of two classes or races is a legitimate way of establishing a prima facie case of discrimination under 42 U.S.C. § 2000e-2(a)(1). Brown v. Mark, 709 F.2d 1499 (6th Cir. 1983). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of

disparate treatment in a Title VII case, Plaintiff must prove that all of the relevant aspects of his employment situation are "nearly identical" to those of the non-minority employees who he alleges were treated more favorably. Pierce, 40 F.3d 796, 802; Payne v. Illinois Cent. Gulf R.R., 665 F. Supp. 1308, 1333 (W.D. Tenn. 1987). The Sixth Circuit has held that "mere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination." Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006).

This Court finds that the Plaintiff was treated differently when she was disciplined for alleged policy violations while other similarly situated white male co-workers were not. Although the Plaintiff protested working on a holiday contrary to the apparent policy, unlike other employees the Plaintiff was given little notice and opportunity to make a selection. In fact, Plaintiff was notified in writing on March 18 via a memorandum in her box, leaving only one shift for her to select a work holiday, even though the memorandum was dated March 11, a full week earlier. In comparison to other officers, Ms. Hollimon was not given fair notice of the holiday schedule selection. Even though she was given extremely late notice after less senior employees had made selections, Defendant did not provide her a face to face or telephonic opportunity to select her work holiday.

Furthermore, it appears to the Court from the evidence at trial that Shelby County's disparate treatment of the Plaintiff caused emotional and health problems that required medical intervention (Civil Service Hearing, p. 132.) Accordingly, the Court finds that Plaintiff has proven her disparate treatment claim by a preponderance of the evidence.

Throughout Plaintiff's employment after her reinstatement, Shelby County Police Department watched her behavior closely, looking for any mistakes or improprieties that would give them an opportunity to terminate her employment. While Plaintiff was disciplined for these infractions, other officers found in violation of the same polices were not disciplined in the same way, if at all.

Once Plaintiff has established a <u>prima</u> <u>facie</u> case of discrimination or retaliation, the burden shifts to the employer who must articulate a legitimate, nondiscriminatory reason for the adverse treatment. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981). A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." <u>Galbraith</u>, 944 F.2d at 282. Defendant's burden is one of production only. <u>Id.</u> at 982-83 (citing <u>Burdine</u>, 450 U.S. at 254).

If Defendant meets this burden, Plaintiff may then attempt to prove that Defendant's proffered reason for the employment decision is merely pretext. <u>Galbraith</u>, 944 F.2d at 279. Plaintiff may show pretext by demonstrating, based on a preponderance of the evidence, either (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the employer's action, or (3) that the proffered reason was insufficient to motivate the employer's action. <u>Manzer v. Diamond Shamrock Chem. Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff, however, is not required to produce direct evidence of discrimination to rebut the employer's proffer of a legitimate, nondiscriminatory reason. <u>Galbraith</u>, 944 F.2d at 283. The trier of fact may ultimately look at the totality of the evidence to determine whether Defendant's decision was motivated by intentional discrimination. <u>Id.</u>

Next the Court will address Plaintiff's retaliation claims. Plaintiff alleges that Shelby County retaliated against her because she complained about unlawful treatment and because she filed a grievance in opposition to Shelby County's action after she was reinstated. Upon her return, Plaintiff complains that she was subjected to excessive and disparate supervision and discipline in retaliation for her actions.

In a retaliation claim the plaintiff must allege that she was engaged in a statutorily protected activity; that she suffered an adverse employment action; and there was a causal connection between the employee's action and the harm suffered. EEOC v. Ohio Edison Co., 7 F.3d 541, 543 (6th Cir 1993). The McDonnell Douglas framework for allocation of the burdens of proof and production is also applied in retaliation cases. Diehl v. Tele-Solutions, Inc., 57 F.3d 482,484. (6th Cir. 1995). The EEOC states that even if the respondent produces evidence of a legitimate discriminatory reason for the challenged action, a violation would still be found if the explanation is a pretext designed to hide an unlawful discriminatory motive. Typically pretext in employment discrimination cases is proven through evidence that the respondent enforced compliance with certain regulations differently for a plaintiff, who is a member of a protected class, vís a vís similarly situated employees of different races and/or genders. Pretext is established when the defendant's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

In applying the McDonnell Douglas test, this Court finds that the Plaintiff meets the first three elements. First, Plaintiff Tanya Hollimon was a member of a protected class by nature of her race and gender. Second, she was subject to adverse employment

9

action, including disciplinary actions and ultimately, her firing. Third, she was qualified for her job as she has previously served the police department as an officer.

This court finds that explanations for Plaintiff's termination were not credible and were a pretext for retaliation. It is apparent from the totality of the evidence that Shelby County treated the Plaintiff differently in its application of the Parking Policy and Lunch Policy as grounds for terminating her employment. Ms. Hollimon successfully showed through the testimony of Officer Brian Beck that other members of the police department violated the parking policy and were not disciplined, much less fired. (Tr. 162.)

The Court has observed the demeanor of the Plaintiff and the witnesses, reviewed the evidence and the administrative records, and finds Plaintiff's testimony and proof to be credible. This Court finds that the Plaintiff not only experienced discrimination based on gender and sex, but also was the subject of retaliation upon her reinstatement as an officer of the Shelby County Police Department. Although the County presents legitimate, non-discriminatory reasons for Hollimon's discipline, Hollimon successfully rebutted those reasons and proved by a preponderance of the evidence that the reasons stated by Shelby County were pretextual.

The Sixth Circuit has established that insubordination can constitute legitimate reasons for termination. See Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994). While the Plaintiff questioned the policy of senior officers working on a holiday, the Court finds no evidence that she did so insubordinately. Instead, she contacted her union representative and filed a grievance. This Court finds it reasonable to believe that when originally asked by staff to relinquish her badge and weapon, as testified by Plaintiff that she was in a state of fear and panic. Accordingly, her refusal to

follow orders is plausible. (Civil Service Hearing, p. 139-140). This is further supported by the fact that she immediately contacted the Police Department to arrange a time to return her badge and weapon after calming down and speaking to her attorney. (Id. 143-144).

"If the plaintiff is able to [establish a *prima facie* case], a mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the challenged actions. McDonnell Douglas, 411 U.S. at 802. If the defendant can articulate such a reason, "then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* (citing McDonnell Douglas, 411 U.S. at 802). Pretext is established "by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." Id. (citing Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir.1991)). However, "[a] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)

In the instant case, the Defendant has proffered evidence which it contends constitutes legitimate and nondiscriminatory reasons for terminating Plaintiff's employment. This evidence consisted of the Loudermill hearing transcript, and departmental memos documenting Plaintiff's behavior. The Court has fully considered the evidence in the present matter, but finds it insufficient to overcome Plaintiff's showing of discrimination and retaliation. The Plaintiff has given legitimate reasons for

her behavior in every situation, either through the witness during the trial proceedings or in the Loudermill hearing.

The Court notes that the standard in a Loudermill hearing and a trial on the merits is sufficiently different that a different conclusion may result. The Plaintiff was able to establish facts supporting her case in spite of the general hostility of the Shelby County employee witnesses to her position. Witness Kathy Crowder was evasive and vague during plaintiff's direct examination, but direct, detailed, and forthcoming during the Defendant's cross examination which addressed similar time periods. Accordingly, the Court found Mr. Crowder's testimony lacked credibility in many respects.

Moreover, Plaintiff presented sufficient evidence that the Defendant treated her differently, *i.e.,* giving white or male employees another opportunity after declining or failing to follow orders or policy, or not imposing disciplinary actions in any way. This was exemplified primarily through Officer Beck's testimony, wherein he recounted his personal behavior and disciplinary action, which contrasted starkly from Ms. Hollimon's treatment.

While the Court believes that the Plaintiff's testimony and presentation of evidence is reconcilable with the objective facts, the Court does not absolve the Plaintiff of all culpability or justify all her actions. It is likely that Plaintiff's emboldened behavior and air of entitlement following her reinstatement no doubt left her superiors and fellow officers frustrated and annoyed. However, a cantankerous attitude is not grounds for an employer to treat an employee differently through discrimination or retaliation.

It is reasonable to conclude that the Plaintiff made certain decisions that constitute a lapse of judgment on her part. Ms. Hollimon could have been more circumspect in her behavior, particularly as she believed her performance was being unfairly scrutinized. However, these actions were not bourne out of insubordination. It appears to this Court these actions by the Plaintiff were watched, reported and used as pretext in order to make a case for her termination.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff Tanya Hollimon's civil rights were violated due to retaliation and employment discrimination based on sex and gender. Shelby County government is ordered to pay Ms. Hollimon $35,000.00 as compensatory damages. Attorney fees are not appropriate in this pro se case.

Judgment is entered for Plaintiff.

**IT IS SO ORDERED** this 31st day of March, 2008.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE